## MEAD ET ALS v. FIGH & BLUE.

1. The sheriff having an execution against G. entered thereon a fictitious levy of a slave, as the property of G. when, in fact, there was no such slave in existence, and took from G. a forthcoming bond, with F. &. B. as his sureties for the delivery of the slave at a stipulated time. The bond being returned forfeited, and execution having issued thereon against the principal and the sureties—Held, that the sureties could not be relieved in Chancery because the *levy* was fictitious.

ERROR to the Chancery Court at Montgomery.

The bill charges that the defendant, Reid, as sheriff of Montgomery county, received an execution from the Circuit Court of Montgomery, in favor of the defendant, Mead, against the defendant, Gillan—That Gillan was possessed of a valuable stock of goods, in the town of Montgomery, and to prevent a levy on the goods and save the trouble of taking an inventory, and prevent the necessity of closing the doors of the store of Gillan, it was agreed between the sheriff and Gillan to execute a delivery bond for a slave by the name of Thomas, which was a fiction, as Gillan owned no such slave, and that it was agreed that goods should be received by the sheriff in discharge of the delivery bond, which was accordingly executed with the complainants as sureties—that Gillan was ready to deliver the goods, but the sheriff did not call to receive them or go on to sell them, but returned the bond forfeited—that Gillan has become insolvent, and the goods, which were all his property, have been sold. The prayer of the bill is for a perpetual injunction.

Reid, by his answer, denies any agreement to receive the goods in discharge of the bond—that the levy endorsed on the execution was by the direction of Gillan—that he did not then nor when the answer was made, believe there was any such negro. Admits that he returned the bond forfeited, and that an execution has issued thereon. Admits the insolvency of Gillan, and that the goods were sold to satisfy other executions.

The testimony shows that no levy was in fact made—and that the indorsement on the execution as having been levied was fictitious.  There was no proof of any agreement or understanding that the goods were to be delivered in discharge of the bond.  It was proved that Figh knew the levy was fictitious.

At the hearing the Chancellor declared the forthcoming bond null and void, and perpetuated the injunction which had issued upon it—from which decree this writ is prosecuted.

GOLDTHWAITE, for the plaintiff in error, argued that the bond could not be impeached except on the ground of fraud— that the fact that the slave indorsed upon the execution as having been levied on had no existence, was not proof of fraud.   [4 H. & M. 180; 6 Munf. 358.]

But if otherwise, the complainant, Figh, could not avail himself of it, as he knew the fact when he executed the bond.   [3 Marsh. 338; 11 Vermont, 483.]

The recitals of the bond cannot be contradicted but on proof of fraud.   [14 Peters, 201.]

WILLIAMS, for defendants in error, contended, that as there was no levy in fact, the sheriff had no authority to take a bond —that this was not like the case where slaves have been levied on claimed by other persons—they were in *esse*, and therefore a delivery possible—that it was a fraud in the sheriff to return a false levy.

The doctrine of estoppel does not apply in equity.

In equity a specific performance is never decreed where it is impossible.   In equity the obligor in a bond has a right to be discharged from the penalty of the bond, by performing the condition—when, as in this case, that is impossible, he is excused from the performance.

ORMOND, J.—The complainants were sureties to a delivery bond, which being returned forfeited, and execution having issued thereon, they seek to avoid the bond on the ground that the levy was fictitious, there being no such slave in existence as the one described in the bond as having been levied on by the sheriff to satisfy Mead's execution.

The Chancellor considered the return of the sheriff that he had levied on a slave which had no existence, as false and fraudulent, and that the forthcoming bond based on such a false levy was at least voidable.

We are not able to perceive the difference between a levy on the property of a stranger to the execution, or on property in which the defendant in execution has no interest, and a fictitious levy.   In  Syme v. Montague, [4 H. & M. 180,] it was held that the sureties to a forthcoming bond could not be relieved in equity on the ground that the defendant in execution was not the owner of the property levied on.   The same principle was affirmed at the last term of this Court in the case of Jemison v. Cozzens, [3 Ala. Rep. 636,] where we held, that equity could not relieve a surety to a forthcoming bond which had been returned forfeited, on the ground that the slaves there levied on, were the separate property of the wife of the defendant in execution.

- If it could be shown that the defendant in execution had no title to the property levied on, and therefore his sureties should be relieved against the penalty of the bond, no reason is perceived why they should not be relieved *pro tanto,* if the property was not of value sufficient to satisfy the execution, and yet it is most obvious such an inquiry would not be permitted.

If it be conceded that a fictitious levy, like the present, is false and fraudulent, we are unable to see how the plaintiff in execution, who is no party to it, can be affected by it.

The law gives the defendant the right to suspend the collection of the money upon his doing certain acts, and it could not be tolerated that he should be permitted afterwards to say that these acts are not binding on him, because they assert a falsehood.   His sureties can be in no better condition than he is, they are not only guarantors for the performance of the act he undertakes to perform, but must also be considered as sponsors for the truth of his declarations that such act may be performed.

We are therefore of opinion, that according to well established principles, as well as on grounds of public policy, the complainants are not entitled to the relief sought by the bill.

36

The decree of the Chancellor, therefore, perpetuating the injunction prayed for in the bill is reversed, and this Court, proceeding to render such decree as the Chancellor should have rendered, hereby orders and decrees, that the bill be dismissed.