## T. J. & S. CLARKE v. GARY.

1. So long as the return of a sheriff is permitted to remain, it must be taken to be true for all purposes, both as it respects the sheriff, and parties claiming rights under it. Therefore, in an action against the sheriff for making an insufficient levy upon an attachment, he cannot show, that by the mistake of a deputy, a return was made upon the attachment, of a slave not levied on, and that in point of fact, a sufficient levy had been made.

2. If a deputy empowers a stranger to make a levy, and afterwards adopts it by his return, it becomes his own act.

Error to the Circuit Court of Sumter.

Clarke v. Gary.

Action on the case against the defendant in error, sheriff of Sumter county, for failing to make a sufficient levy, in a suit commenced by attachment, by the plaintiffs in error, against one Caleb B. Greenwood.

From a bill of exceptions taken at the trial, it appears, that the plaintiffs produced the writ of attachment, upon which was endorsed an authority to James M. Sergeant, to levy and return, signed with the name of the defendant as sheriff of Sumter county, upon which was a return, " Received 4th July, 1843. Levied same day, on one negro man named James, forty-five years old. Bond taken and herewith returned. M. E. Gary, Sheriff of Sumter county, by B. P. Brantly, D. S." Also a replevin bond, executed by the defendant, Greenwood, dated 4th July, 1843.

The plaintiff prosecuted his suit to judgment for $318, besides costs, upon which an execution was issued, and the slave levied on sold, which, after deducting costs and sheriff's fees, left $137 90 to be applied to the judgment, and a return of no property found as to the residue.

The plaintiff then introduced one Pinkard, who proved, that as the agent of the plaintiff, he placed the attachment in the hands of one Manasco, a deputy of the sheriff, on the day it issued, and informed him that Greenwood had property sufficient to satisfy it. That Manasco was unwell, but promised to procure some one to levy it, and did procure one James M. Sergeant, who was not a deputy of the sheriff, to undertake to levy it ; and that W. J. Steele, one of the plaintiff's attorneys, wrote a deputation for Sergeant, at the instance of Manasco, who signed the name of the sheriff to it.

That Sergeant and the witness went to Warsaw, in Sumter county, on the same day, where the former pointed out two slaves, the property of Greenwood, either of whom were of value, more than sufficient to satisfy the attachment, and that it was levied on a slave worth $700.

The defendant then introduced his deputy, B. P. Brantly, who testified that the return on the attachment was not by him, or by any one authorized to make it for him. That the return was made by one Thompson, who was at the time also a deputy of the defendant. That he never saw the attachment before, but that Thompson, a few days after it is-

sued, placed in his hands the replevin bond, and informed
him that Sergeant had levied on a negro under an attach-
ment, and he wished him to take a bond to Warsaw, and get
it filled up.   That he went and procured the bond in evi-
dence, and inserted the name of the slave, James, aged 45.
That Thompson was in the habit of making returns for him.

The plaintiff's counsel moved the court to exclude this
testimony from the jury, upon the ground, that it contradic-
ted the return endorsed on the attachment, which motion the
court overruled.   It was also in proof, that the hand-writing
in the body of the bond, was that of Manasco, who some-
times acted as clerk for Thompson, and that Thompson,
Manasco and Brantly, were all deputies of the sheriff, when
the attachment issued, having their office at Gainesville.   It
was also proved, that Greenwood had four or five slaves, be-
sides other property in the county, from the time the attach-
ment issued, to the winter of 1844, when he removed with
them to parts unknown.

The plaintiff's counsel then requested the court to charge,
that if they believed from the evidence, that the return made
and endorsed on the attachment, was made by the sheriff, or
any deputy of his, that he is bound by the same in a suit
against him, on the return, and cannot controvert it; which
charge the court gave, with this qualification, that the sher-
iff, notwithstanding the return, would be permitted to show
that it was made by mistake, or was a forgery, and that by
mistake, the court meant that the sheriff could show, that
Thompson had no authority from Brantly to put it there.

2. That where a return is made by the sheriff, or any de-
puty of his, he will not be permitted to falsify his return, or
show that a different levy, or a levy on property other than
that specified in the return was made: which charge was
given with this qualification, that it is competent for the
sheriff to prove that it was not his return, or any of his depu-
ties, and to show that it was made by mistake, or was a for-
gery.

3. That if the attachment came to the hands of the sher-
iff, or any of his deputies, who without the request of the
plaintiff, authorized any other person by special appointment
in the name of the sheriff to execute it, that he was bound

by such appointment, unless he repudiated it, which he must show to excuse him from the consequence of such act; which charge the court gave with this qualification, that it must be shown affirmatively, that the sheriff had knowledge of such appointment, or that he would not be bound by the acts of the person thus appointed, but that they might infer that he had such knowledge, by the process being returned into court.

4. That in order to make the levy upon the attachment complete, the sheriff must in his return specify the property levied on, which was given with the qualification, that the sheriff might show that it was not his return, or was made by mistake, or was a forgery.

5. That the sheriff is estopped from showing in a suit against him, on his return, that he levied on other property than that shown to have been levied on by said return, and will not be permitted to give evidence in contradiction to his return; which the court gave with a similar qualification as the preceding. To all which the plaintiff excepted, and which he assigns as error.

METCALFE, for plaintiff in error.
HUNTINGTON, contra.

ORMOND, J.—We understand it to be a settled principle, that the return of a sheriff to process, cannot be contradicted. This principle has been carried so far, that it has been held, that the defendant could not be permitted to show, that a writ had not been executed, but was remitted to his rights against the sheriff. The only relaxation of the rule in this court, has been, to permit the defendant against whom a judgment had been obtained without service of process, or notice that the action was pending, to apply to a court of chancery for relief, provided he had a defence to the action, which from want of notice he was prevented from making. [Crafts v. Dexter, 8 Ala. 767.] In Figh & Blue v. Mead, 4 Ala. 279, it was held that a fictitious levy was binding, not only on the sheriff, but also on the sureties to a forthcoming bond; and that as against the plaintiff in execu-

tion, they were estopped from denying that such a levy had been made, and could not be relieved in chancery.

The sheriff may be permitted to amend his return, according to the truth of the case, provided rights acquired under it, are not thereby prejudiced; but so long as the return is permitted to remain, it must be taken to be true for all purposes, both as it respects the sheriff, and parties claiming rights under it.

This rule the court in terms admitted, by responding in the affirmative to the charges moved for by the plaintiff, in which it was asserted (but the admission so made was immediately neutralized by the qualification annexed to it) that it would not be binding upon him, if it was a forgery, or was made by mistake.

The sheriff is the executive officer of the court, and when he returns process to the clerk of the court, either in person or by his deputy, he cannot afterwards be permitted to aver it was not his act. It may be conceded, that if a stranger should personate the sheriff, and impose a false return on the clerk, in the name of the sheriff, it would impose no liability upon him; but as no such fact exists in the case, it was doubtless put by the court by way of illustration. The defence of the sheriff appears to have been, that by the mistake of one of his deputies, a return was made on the attachment of a negro not levied upon, which mistake was also carried into the replevin bond; but we are clear in the opinion, that this mistake, if it existed, could not defeat the rights of the plaintiff.

Let us look for a moment at the consequences to which such a principle would lead. The creditor takes out an attachment, which is levied on property amply sufficient for the payment of his debt. By the mistake of the sheriff, or his deputy, other property is substituted for that actually levied on, insufficient to discharge the debt, and before judgment can be obtained the debtor absconds with all his property. The creditor has done all in his power to do, by placing the process in the sheriff's hands, and the loss has been occasioned by his neglect of his duty. Surely it cannot be gravely contended, that it is a sufficient answer to the creditor, who has thus been deprived of the fruit of his judg-

Clarke v. Gary.

ment, that the loss was occasioned by mistake. To charge the sheriff, it is not necessary to show *mal feasance*, it is sufficient that he is guilty of *non feasance*—that he has not made a sufficient levy ; and whether this was caused by mistake, or accident, or was designedly made, is wholly unimportant. He cannot be controlled by the creditor, and necessarily acts at his peril: as between the sheriff and his deputies, doubtless these rules do not apply, and proof of a mistake might be made, so as to cast the consequences of a default upon the individual to whose conduct it was owing.

The testimony of Brantly should have been excluded from the jury, if for no other reason, for irrelevancy. Its purpose was to show, that Thompson had no authority to make the return in his name. It would seem that he had such authority, as it appears he was in the habit of doing so. But we consider it entirely unimportant, whether he had, or not, such authority, as the question here, is not, which of these deputies is liable to the principal sheriff, for the consequences of this act, but whether the sheriff is responsible to the plaintiff. Thompson and Brantly were both deputies of the sheriff; if therefore Thompson had authority to make the return in the name of Brantly, it is the act of Brantly, if he had not, it is his own act, and in either aspect it charges the sheriff, by whose authority the act was done. It could not be tolerated, that the rights of the plaintiff should be impaired by a controversy between these deputies, as to the authorship of an act, which if done by either, or both, would be alike binding on the sheriff.

As it respects the levy made by Sergeant, we do not think it necessary to inquire, in this case, how far the deputy of a sheriff, may impower another to act, because if the levy made by Sergeant, which was sufficient to satisfy the demand, was adopted by the deputy, who it appears went to Warsaw, to complete the levy by taking a replevy bond for the delivery of the slave to satisfy the judgment, it became his act, and the sheriff is responsible for the substitution of an inferior slave for the one levied on, and it is entirely unimportant whether this substitution was the effect of accident or design. If, on the other hand, he did not adopt the levy made by Sergeant, but made a new and substantive levy, the sheriff

is clearly responsible, it being shown to be insufficient, and that the defendant had ample means on which a sufficient levy could have been made. It may be added, that this last is the natural, if indeed it is not the necessary inference, from the return and the replevy bond.

From this examination it appears, that the court erred in the admission of the testimony of Brantly, and in the qualifications of, and additions made to the charges moved for by the plaintiff's attorney.

Let the judgment be reversed and the cause remanded.